IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

SHANON SCHMIDTKNECHT individually
and WILLIAM SCHMIDTKNECHT
individually and as Special Administrator of
the Estate of COLE SCHMIDTKNECHT,

        Plaintiffs,

    v.

OPTUMRX, INC., WALGREENS BOOTS
ALLIANCE, INC., and WALGREENS
PHARMACY,

        Defendants.

Case No. 1:25-cv-0093-BBC

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OPTUMRX, INC.'S
MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 3

ARGUMENT ....................................................................................................................... 5

I.    LEGAL STANDARD ............................................................................................ 5

II.   PLAINTIFFS' STATE LAW CLAIMS AGAINST OPTUM RX ARE PREEMPTED BY ERISA. ..................................................................................... 5

    A.   Congress Intended ERISA To Have Broad Preemptive Effect. ................................... 5

    B.   The Kriete Plan Is Governed By ERISA. .................................................................... 6

    C.   Both "Express" and "Complete" ERISA Preemption Doctrines Preempt Plaintiffs' Claims. ...................................................................................................... 7

        1.   Express preemption ............................................................................................ 8

        2.   Complete preemption ....................................................................................... 14

    D.   The Complaint Fails To State A Claim Under ERISA And Should Be Dismissed With Prejudice. ........................................................................................ 16

III.  PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENCE PER SE.................... 17

CONCLUSION ................................................................................................................... 20

# TABLE OF AUTHORITIES

**Federal Cases**

*Aetna Health Inc. v. Davila*,
   542 U.S. 200 (2004) ................................................................................ 5, 6, 14, 15

*Alessi v. Raybestos-Manhattan, Inc.*,
   451 U.S. 504 (1981) ...................................................................................... 5

*Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan by and through Lyon v. Buth*,
   475 F. Supp. 3d 910 (E.D. Wis. 2020) ............................................................. 5

*Aucoin v. RSW Holdings, L.L.C.*,
   476 F. Supp. 3d 608  (M.D. La. 2007) ............................................................. 12

*Bank of La. v. Aetna U.S. Healthcare Inc.*,
   468 F.3d 237 (2006) ..................................................................................... 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................... 5

*Bryant v. Express Scripts Inc.*,
   No. 3:20-CV-01343, 2021 WL 1216888 (W.D. La. Mar. 15, 2021) ..................... 8, 15

*Cannon v. Blue Cross & Blue Shield of Mass., Inc.*,
   No. 23-cv-10950-DJC, 2024 WL 3902835 (D. Mass. Aug. 22, 2024) ................. 11, 12, 13

*Cole v. Am. Specialty Health Network, Inc.*,
   No. 3:14-cv-02022, 2015 WL 1734926 (M.D. Tenn. Apr. 16, 2015) .................... 11

*Cooper v. Eagle River Mem'l Hosp., Inc.*,
   270 F.3d 456 (7th Cir. 2001) ........................................................................ 17, 18, 19

*Corcoran v. United Healthcare, Inc.*,
   965 F.2d 1321 (5th Cir. 1992) ....................................................................... 8

*Di Joseph v. Standard Ins. Co.*,
   776 F. App'x. 343 (7th Cir. 2019) .................................................................. 11

*E.I. DuPont de Nemours & Co. v. Sawyer*,
   517 F.3d 785 (5th Cir. 2008) ........................................................................ 8

*Emerson v. Dart*,
   109 F.4th 936 (7th Cir. 2024) ....................................................................... 3

*Farias v. Mass. Laborers' Health and Welfare Fund*,
   Civil Action No. 17-11097-MBB, 2018 WL 340031 (D. Mass. Jan. 9, 2018) .......... 12

*Franciscan Skemp Healthcare, Inc. v. Central States Joint Bd. Health & Welfare Tr. Fund*,
538 F.3d 594 (7th Cir. 2008) ............................................................................................ 16

*Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990) .......................................................... 9, 11

*Lavalais v. Vill. of Melrose Park*,
734 F.3d 629 (7th Cir. 2013) ............................................................................................... 3

*Lukaszewicz v. Ortho Pharm. Corp.*,
510 F. Supp. 961 (E.D. Wis. 1981) .................................................................................... 19

*Maciosek v. Blue Cross & Blue Shield United of Wis.*,
930 F.2d 536 (7th Cir. 1991) .............................................................................................. 17

*Mass. Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985) ............................................................................................................. 6

*McCraw v. Mensch*,
No. 06-C-86-S, 2006 WL 2620344 (W.D. Wis. Sept. 12, 2006) ................................... 18, 19

*Metro. Life Ins. Co. v. Massachusetts*,
471 U.S. 724 (1985) ............................................................................................................. 9

*Novak v. State Farm Fire & Cas. Co.*,
687 F. Supp. 3d 820 (E.D. Wis. 2023) ............................................................................... 5

*Pharm. Care Mgmt. Ass'n v. Mulready*,
78 F.4th 1183 (10th Cir. 2023) ........................................................................................... 3

*Pilot Life Ins. Co. v. Dedeaux*,
481 U.S. 41 (1987) .................................................................................................... passim

*Ramirez v. Potawatomi Bingo Casino*,
No. 06-C-322, 2006 WL 3327142 (E.D. Wis. Nov. 15, 2006) ............................................ 11

*Reilly v. Blue Cross & Blue Shield United of Wis.*,
846 F.2d 416 (7th Cir. 1988) .............................................................................................. 13

*Rosenblum v. Travelbyus.com Ltd.*,
299 F.3d 657 (7th Cir. 2002) ............................................................................................... 7

*Shaw v. Delta Air Lines*,
463 U.S. 85 (1983) ............................................................................................................... 9

*Simon v. Express Scripts, Inc.*,
No. 13-0187, 2013 WL 5375433 (W.D. La. Sept. 23, 2013) ............................................. 15

*Spain v. Aetna Life Ins. Co.*,
11 F.3d 129 (9th Cir. 1993) ............................................................................................ 8, 11

*Carpenters Loc. Union No. 26 v. U.S. Fid. & Guar. Co.*,
    215 F.3d 136 (1st Cir. 2000)................................................................................. 13

*Weeks v. UMR, Inc.*,
    370 F. Supp. 3d 943 (C.D. Ill. 2018) .................................................................... 11

*Wright v. Assoc. Ins. Cos.*,
    29 F.3d 1244 (7th Cir. 1994) .................................................................................. 7

**State Cases**

*Antwaun A. ex rel. Muwonge v. Heritage Mut. Ins. Co.*,
    596 N.W.2d 456 (Wis. 1999)........................................................................... 17, 18

*Brown v. Maxey*,
    369 N.W.2d 677 (1985) ......................................................................................... 13

*Hansen v. Tex. Roadhouse, Inc.*,
    827 N.W.2d 99 (Wis. Ct. App. 2013) .................................................................... 13

*Leahy by Heft v. Kenosha Mem'l Hosp.*,
    348 N.W.2d 607 (Wis. Ct. App. 1984) .................................................................. 19

*Tatur v. Solsrud*,
    498 N.W.2d 232 (1993) ......................................................................................... 17

*Walker v. Bignell*,
    301 N.W.2d 447 (Wis. 1981)................................................................................. 18

**Federal Statutes**

29 U.S.C. § 1002(1) .................................................................................................. 7

29 U.S.C. § 1003(a) .................................................................................................. 6

29 U.S.C. § 1132 ...................................................................................................... 7

29 U.S.C. § 1132(a) ................................................................................................ 17

29 U.S.C. § 1132(a)(1)(B) ...................................................................................... 15

29 U.S.C. § 1144(a) ............................................................................................. 7, 8

**State Statutes**

Wis. Stat. § 601.41 ................................................................................................. 20

Wis. Stat. § 601.64 ................................................................................................. 20

Wis. Stat. § 632.861(3) ................................................................................................ 19

Wis. Stat. § 632.861(4) ................................................................................................ 19

Wis. Stat. § 632.866(2)(a) ............................................................................................ 20

**Federal Rules**

Federal Rule of Civil Procedure 12(b)(6) ..................................................................... 5

**Other Authorities**

Restatement (Second) of Torts § 402A ....................................................................... 19

Defendant OptumRx, Inc. ("Optum Rx"), through undersigned counsel, submits this Memorandum in support of its Motion to Dismiss Plaintiffs' Shanon Schmidtknecht and William Schmidtknecht's ("Plaintiffs") Civil Action Complaint ("Complaint").

## **INTRODUCTION**

Optum Rx expresses its deepest sympathies to the parents and loved ones of Cole Schmidtknecht, whose untimely death is unquestionably heartbreaking. Yet, while the circumstances giving rise to this lawsuit are profoundly tragic, federal law does not allow Plaintiffs to bring the claims they have asserted here, because those claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). ERISA's broad preemption provision ensures uniformity of federal law governing employee benefit plans like the one through which Cole Schmidtknecht received health insurance, foreclosing state law claims that seek to impose liability relating to plan benefits, including those at issue here. To that end, Congress gave ERISA what courts have long-noted is "deliberately expansive" preemptive force, making ERISA's remedial provisions *the sole avenue* for claims concerning the administration of ERISA-governed plans. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46 (1987) (emphasis added). Accordingly, while Optum Rx recognizes the unspeakable loss suffered by Plaintiffs, courts apply the law as enacted by Congress and find that ERISA preempts state law causes of action like Plaintiffs'.

Of course, at this stage, the Court must accept well-pled factual allegations as true. It is equally true, however, that the facts alleged in the Complaint present an incomplete picture of the events surrounding Mr. Schmidtknecht's interactions with the pharmacy, and indirectly with Optum Rx, in the period leading up to and on January 10, 2024, when he went to the pharmacy to fill his prescriptions. Thus, although the Complaint alleges that Mr. Schmidtknecht had been taking Advair Diskus regularly up until that date, it fails to disclose that Mr. Schmidtknecht had not filled

1

any prescriptions for Advair Diskus using his Optum Rx pharmacy benefit since April 5, 2022. It also omits any mention of other medications that he may have been offered or received on January 10, 2024, although Plaintiffs have said publicly that Mr. Schmidtknecht was dispensed the emergency asthma medication Albuterol that day.[1]

Plaintiffs seek to recover compensatory and punitive damages for his death, which they allege was caused by Optum Rx's allegedly improper administration of the Kriete Plan, including: alleged failure to give notice of formulary changes; failure to offer an exception to formulary changes; and denial of coverage for Mr. Schmidtknecht's asthma medication under the terms of his employer's self-insured health plan that Optum Rx administered. In pursuit of these damages, Plaintiffs assert claims for negligence, negligence per se, punitive damages, and wrongful death under Wisconsin law. Each of those claims "relate to" the Kriete Plan, an ERISA-governed employee benefit plan and, thus, are preempted by ERISA's express and expansive preemption provisions at ERISA § 514(a). Additionally, claims brought by the Estate of Cole Schmidtknecht, which Mr. Schmidtknecht could have brought under ERISA, are preempted under the complete preemption doctrine because they fall within the scope of ERISA's civil enforcement provision, ERISA § 502(a). Nor are the compensatory and punitive damages Plaintiffs seek available in a claim to recover benefits under ERISA, the only permitted cause of action.

Further, Plaintiffs cannot state a claim for negligence per se under Wisconsin law because the statutes referenced in the Complaint, which regulate certain operations of pharmacy benefits managers like Optum Rx, are not so-called "safety statutes" that the Wisconsin legislature intended to impose civil liability—a requirement to sustain a claim for negligence per se. Therefore, in addition to being preempted by ERISA, Plaintiffs' negligence per se claim must be dismissed.

---

[1] https://fox47.com/news/local/parents-push-for-reform-after-son-couldnt-afford-new-cost-of-meds-died-of-asthma-attack (last visited Feb. 14, 2025).

In sum, the sweeping preemptive force Congress gave ERISA applies even when the circumstances giving rise the asserted claims are as undeniably tragic as those present here. Accordingly, because Plaintiffs' claims arise from Optum Rx's allegedly improper administration of an ERISA-governed employee benefit plan, those claims are preempted by ERISA and must be dismissed as a matter of law.

## FACTUAL BACKGROUND[2]

Optum Rx is a pharmacy benefit manager ("PBM"). As a PBM, Optum Rx is retained by health plans to manage and facilitate the plans' pharmacy benefits, including the formulary a plan chooses to adopt.[3] (*See* Dkt. 1 ("Compl.") ¶¶ 53–54.) When a health plan member (or member's prescriber) presents a prescription to a pharmacy, the pharmacy submits a claim for that prescription to Optum Rx, which administratively adjudicates the claim pursuant to the applicable plan's design and communicates the results of the adjudication back to the pharmacy. *See Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1188–89 (10th Cir. 2023).

Beginning in March 2023, Cole Schmidtknecht ("Mr. Schmidtknecht") participated in a self-insured health insurance plan (the "Kriete Plan") provided by his employer, Kriete Truck Center Green Bay ("Kriete"). (Compl. ¶¶ 51–53.) Optum Rx serves as the PBM for the Kriete Plan. (*Id.* ¶ 54.) Mr. Schmidtknecht had a medical history of chronic asthma, which his family alleges he treated with Advair Diskus, among other medications. (*Id.* ¶¶ 49-50, 75.)[4] At one time, under the drug formulary selected by Kriete for its Plan, Advair Diskus was covered by the Kriete

---

[2] Again, Optum Rx is aware of multiple factual inaccuracies and omissions in the Complaint; the following factual statement, drawn from the Complaint, is assumed to be true solely for the purposes of this Motion. *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024) ("At the pleadings stage, we 'accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff.'" quoting *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)).

[3] A "formulary" is a list of prescription drugs that are covered by a health insurance plan.

[4] As noted above, Optum Rx's records show that Mr. Schmidtknecht had not filled an Advair Diskus prescription through an Optum Rx-administered pharmacy benefit since April 5, 2022.

Plan and Mr. Schmidtknecht allegedly paid between $35 and $66.86 to obtain Advair Diskus. (*Id.* ¶ 55.) That formulary changed on January 1, 2024, and other asthma therapeutically equivalent medications replaced Advair Diskus as covered medications for asthma. *Id*. ¶ 22.

On January 10, 2024, Mr. Schmidtknecht presented a prescription for Advair Diskus at the Walgreens pharmacy, Store #12693, at 729 West Northland Avenue, Appleton, Wisconsin ("Walgreens"). (*Id.* ¶ 56.) At the pharmacy, Mr. Schmidtknecht was advised that Advair Diskus was no longer covered by the Kriete Plan and that it would cost him $539.19 out of pocket. (*Id.* ¶ 57.) After adjudicating and rejecting the claim based on the Kriete Plan formulary, Optum Rx's electronic claims adjudication system responded to Walgreens with messaging to contact Mr. Schmidtknecht's prescribing physician and advise him of "clinically-appropriate alternatives at a Tier-1 [lowest cost] Co-pay: 'Premium Drug Exclusion: Drug Not Covered; -Contact prescriber; Use Advair HFA; Breo Ellipta; Symbicort." (*Id.* ¶ 61.) Plaintiffs allege that Walgreens neither informed Mr. Schmidtknecht of the less expensive alternatives to Advair Diskus available to him under the Kriete Plan, nor passed the rejection and messaging on to Mr. Schmidtknecht's physician. (*Id.* ¶¶ 61–63.) Mr. Schmidtknecht left Walgreens without obtaining Advair Diskus or any less expensive alternatives. (*Id.* ¶ 69.)[5]

On January 15, 2024, Mr. Schmidtknecht had a severe asthma attack and was taken to the hospital. (*Id.* ¶¶ 76–77.) Mr. Schmidtknecht passed away on January 21, 2024. (*Id.* ¶ 83.) The immediate cause of death listed on Mr. Schmidtknecht's death certificate was "*status asthmaticus.*" (*Id.* ¶ 84.)

On January 21, 2025, this action was filed by Mr. Schmidtknecht's parents, William and Shanon Schmidtknecht, in their individual capacities and by William in his capacity as Special

---

[5] As noted above, Plaintiffs have stated publicly that Mr. Schmidknecht did receive and leave Walgreens that day with an emergency asthma medication.

Administrator of the Estate of Cole Schmidtknecht ("Estate"). (Compl. ¶¶ 1–5.) The Complaint names Optum Rx and two Walgreens parties as Defendants. The Complaint asserts claims for negligence, negligence per se, and punitive damages by all Plaintiffs against Optum Rx. (*Id.* ¶¶ 87–94, 106–25, 126–30.) The Complaint also asserts against all Defendants a cause of action for wrongful death by William and Shanon Schmidtknecht in their individual capacities (*id.* ¶¶ 136–39) and a cause of action for "Claim of the Estate of Cole Schmidtknecht" by all Plaintiffs (*id.* ¶¶ 140–43).

## ARGUMENT

## I.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint to state a claim upon which relief can be granted." *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan by and through Lyon v. Buth*, 475 F. Supp. 3d 910, 921 (E.D. Wis. 2020). "To survive a motion for Rule 12(b)(6) dismissal, a complaint must contain factual allegations that 'raise a right to relief above the speculative level.'" *Novak v. State Farm Fire & Cas. Co.*, 687 F. Supp. 3d 820, 822 (E.D. Wis. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## II.  PLAINTIFFS' STATE LAW CLAIMS AGAINST OPTUM RX ARE PREEMPTED BY ERISA.

### A.   Congress Intended ERISA To Have Broad Preemptive Effect.

Congress enacted ERISA "to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions . . . which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). "ERISA's 'comprehensive legislative scheme' includes 'an integrated

system of procedures for enforcement.' . . . This integrated enforcement mechanism . . . is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Id.* (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985)).

As the Supreme Court has recognized, "the detailed provisions of [ERISA] § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Pilot Life*, 481 U.S. at 54. Addressing the possibility of state law remedies for claims concerning ERISA-governed plans, the Court further noted:

> The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. 'The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted … provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'

*Id.* at 54 (quoting *Russell*, 473 U.S. at 146). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila*, 542 U.S. at 209.

**B.    The Kriete Plan Is Governed By ERISA.**

ERISA applies to "any employee benefit plan if it is established or maintained . . . by any employer engaged in commerce." 29 U.S.C. § 1003(a). An "employee welfare benefit plan," as defined by ERISA, includes "any plan, fund or program . . . maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise,

(A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment. . . ." 29 U.S.C. § 1002(1).

The Kriete Plan is governed by ERISA. This is clear from the face of the Complaint alone. As alleged, the Kriete Plan is a "self-insured" health plan provided to Mr. Schmidtknecht as an employee of Kriete. (Comp. ¶¶ 52–53.) Mr. Schmidtknecht sought coverage for medication, specifically including Advair Diskus, under the Kriete Plan. (*Id.* ¶¶ 55–56.) As alleged, Optum Rx serves as the PBM for the Kriete Plan. (*Id.* ¶ 54.) Thus, because the Kriete Plan is a plan maintained and established by an employer in commerce which provides health benefits to Kriete's employees, it is an employee benefit plan subject to ERISA.

The Kriete Plan's status as an ERISA plan is confirmed by its summary plan description ("SPD") provided to all covered employees.[6] (Exhibit 1, SPD at 1 ("The Plan is intended to comply with and be governed by the Employee Retirement Income Security Act of 1974 (ERISA) and its amendments.").

### C. Both "Express" and "Complete" ERISA Preemption Doctrines Preempt Plaintiffs' Claims.

ERISA preempts state law claims involving ERISA-governed plans in two independent ways: (1) "expansive" express preemption under ERISA § 514(a) (29 U.S.C. § 1144(a)) and (2) complete preemption under ERISA § 502(a) (29 U.S.C. § 1132). *Pilot Life*, 481 U.S. at 45, 52–53. ERISA preemption of either type is required when the pertinent conditions are met, even if preemption results in a plaintiff not being entitled to relief. As the Ninth Circuit has noted, "'[t]he

---

[6] The SPD for the Kriete Plan is properly considered in ruling on Optum Rx's Motion because the Plan is central to the claims in the Complaint, which repeatedly refers to the Plan, the drugs the Plan covered or did not cover, and other pertinent Plan provisions. (*See* Compl., ¶¶ 30-31, 51–55, 60, 91, 113–15, 118–19); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) ("'[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim'" (quoting *Wright v. Assoc. Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994))).

policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.'" *Spain v. Aetna Life Ins. Co.*, 11 F.3d 129, 132 (9th Cir. 1993) (quoting *Pilot Life*, 481 U.S. at 54) (alteration in original). Courts enforce Congress' policy choices understanding that doing so may leave a plaintiff without a remedy: "'While we are not unmindful of the fact that our interpretation of the pre-emption clause leaves a gap in remedies within a statute intended to protect participants in employee benefit plans . . . the lack of an ERISA remedy does not affect a pre-emption analysis.'" *Id.* (quoting *Corcoran v. United Healthcare, Inc.*, 965 F.2d 1321, 1333 (5th Cir. 1992)).

Moreover, "[f]or purposes of ERISA preemption the critical distinction is not whether the parties to a claim are traditional ERISA entities in some capacity, but instead whether the relevant state law affects an aspect of the relationship that is comprehensively regulated by ERISA." *E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 800 (5th Cir. 2008) (quoting *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 243 (2006)) (alteration in original). For that reason, ERISA preemption applies even when a PBM contracted to administer an ERISA plan is sued, as opposed to the plan itself. *See Bryant v. Express Scripts Inc.*, No. 3:20-CV-01343, 2021 WL 1216888, at *4 (W.D. La. Mar. 15, 2021) (holding that ERISA preemption applied to claims against PBM for an ERISA plan).

As demonstrated below, both types of preemption apply here.

### 1. Express preemption

Each of Plaintiffs' claims concern the alleged improper administration of the Kriete Plan. Accordingly, they "relate to" the Kriete Plan and are therefore expressly preempted under § 514(a).

ERISA § 514(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan . . . ." 29 U.S.C. § 1144(a) (emphasis

added). ERISA § 514(a) is a sweeping preemption provision and "relate to" is to be "given its broad common-sense meaning. . . ." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985). Preemption under § 514(a) "is not limited to 'state laws specifically designed to affect employee benefit plans,'" but also applies to common law causes of action "based on alleged improper processing of a claim for benefits under an employee benefit plan." *Pilot Life*, 481 U.S. at 47–48 (quoting *Shaw v. Delta Air Lines*, 463 U.S. 85, 98 (1983) (holding that "Tortious Breach of Contract," "Breach of Fiduciary Duties," and "Fraud in the Inducement" claims were preempted by § 514(a)). Such common law claims "undoubtedly meet the criteria for preemption under § 514(a)." *Id*.

Preemption under §514(a) is required when two conditions are satisfied: (1) the plan at issue is an "employee benefit plan" as defined by ERISA, and (2) the cause of action "relates to" that plan. *Id*. The first condition is satisfied here, as discussed in Part II.B, *supra*.

The second condition is also satisfied. A cause of action "relates to" an ERISA plan where "the court's inquiry must be directed to the plan. . . ." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990).

Here, each of Plaintiffs' claims against Optum Rx "relates to" the Kriete Plan. Plaintiffs' negligence (Count I), negligence per se (Count III), and punitive damages (Count IV) claims (which are incorporated into their two "Causes of Action") are all based on the premise that Optum Rx improperly declined to authorize coverage under the Plan for Advair Diskus to Mr. Schmidtknecht on January 10, 2024, at the out-of-pocket costs he previously paid under the Kriete Plan. (Compl. ¶¶ 70–73, 89–91, 111, 114–15, 118–20, 126-30, 136-39, 140-43.) That asserted right to coverage is based entirely on the terms of the ERISA-governed Kriete Plan. Absent that plan, he would have had no right to seek Optum Rx's payment for that medication.

Moreover, the other duties which Plaintiffs allege Optum Rx owed and supposedly violated are all topics addressed in the terms of the Kriete Plan, as described in the SPD.

For example, Plaintiffs allege that Optum Rx has a duty not to raise prescription drug prices, and that it "failed" to ensure Mr. Schmidtknecht had access to Advair Diskus or a generic alternative. (*Id.* ¶¶ 89, 91.a.) The SPD addresses how medications are made available and assigned pricing tiers under the Kriete Plan formulary, as administered by Optum Rx, and tells members that the "tier status of a Prescription Drug may change periodically, as frequently as monthly, based on the Formulary Management Committee's periodic tiering decisions." (SPD at 91.) The SPD also addresses the manner in which changes may be made to the Kriete Plan generally. (SPD at 139.) Given that the SPD specifically reserves the right to periodically change the tier status of medications, and therefore their prices, the Court would need to consider the SPD to determine whether Optum Rx owed these alleged duties and whether those duties were met.

Similarly, Plaintiffs allege that Optum Rx has a duty to inform Kriete Plan participants of formulary changes in price and coverage. (*Id.* ¶¶ 90, 91.) Plaintiffs also allege a duty to provide pharmacies with specific information regarding less expensive alternative medications. (*Id.* ¶ 91.g, h, i.) The SPD tells members where information about the formulary can be found. (SPD at 91–98.) Again, the Court would need to consider whether the information regarding formulary changes in the SPD is sufficient to discharge the alleged duties, if they exist.

Finally, Plaintiffs allege that Optum Rx has a duty to give Kriete Plan participants an opportunity to seek an exception to formulary changes and not to require adherence to a step therapy protocol. (*Id.* ¶ 91.c, e, f.) The SPD details the step therapy protocol and appeal process available to Kriete Plan participants and beneficiaries. (SPD at 120–29.) As a result, the Court

would need to consider this portion of the SPD to determine whether these alleged duties were met, if they exist.

Despite Plaintiffs' attempt to frame their claims in terms of duties outside of ERISA, each of these alleged duties ties back to the terms of the Kriete Plan, meaning the propriety of Optum Rx's alleged conduct cannot be adjudicated without reference to those terms. Because the Court's inquiry with respect to those claims would therefore be directed to the terms of the Kriete Plan, Plaintiffs' claims are preempted. *See Ingersoll-Rand Co.*, 498 U.S. at 140 (holding that a state law cause of action was preempted under § 514(a) where "the court's inquiry must be directed to the plan" to resolve the claim).

Courts regularly find ERISA preemption of state law torts that, at their core, "relate to" an ERISA plan within the meaning of § 514(a). *See, e.g., Di Joseph v. Standard Ins. Co.*, 776 F. App'x. 343, 347–48 (7th Cir. 2019) (affirming dismissal of negligence claim concerning termination of disability benefits as preempted by ERISA); *Spain*, 11 F.3d 129 (affirming dismissal of wrongful death claim as preempted by ERISA); *Ramirez v. Potawatomi Bingo Casino*, No. 06-C-322, 2006 WL 3327142, at *2 (E.D. Wis. Nov. 15, 2006) (dismissing claim for negligent failure to provide benefits as preempted by ERISA); *Cole v. Am. Specialty Health Network, Inc.*, No. 3:14-cv-02022, 2015 WL 1734926, at *3 (M.D. Tenn. Apr. 16, 2015) (dismissing negligence per se claim as preempted by ERISA); *Cannon v. Blue Cross & Blue Shield of Mass., Inc.*, No. 23-cv-10950-DJC, 2024 WL 3902835 (D. Mass. Aug. 22, 2024) (holding that wrongful death claim was preempted by ERISA).

This is true even when the tort claim is allegedly based on the violation of state law duties arising outside the scope of ERISA. *Weeks v. UMR, Inc.*, 370 F. Supp. 3d 943, 953 (C.D. Ill. 2018) (holding that Illinois Consumer Fraud Act claim alleging misrepresentations about plan coverage

was preempted by ERISA § 514(a) because adjudicating the claim required interpreting the plan's terms); *Farias v. Mass. Laborers' Health and Welfare Fund*, Civil Action No. 17-11097-MBB, 2018 WL 340031 (D. Mass. Jan. 9, 2018) (negligence claim for alleged breach of "'obligation to act reasonably as to the disbursement of medication'" and "duty to 'follow and abide by state statutory and regulatory law'" in connection with prescription and pharmacy restrictions imposed under ERISA plan preempted by § 514(a)); *Aucoin v. RSW Holdings, L.L.C.*, 476 F. Supp. 3d 608 (M.D. La. 2007) (ERISA preempted claim against employer for failure to notify employee regarding continuation coverage as required by Louisiana regulation).

*Cannon v. Blue Cross and Blue Shield of Massachusetts, Inc.*, is instructive. In that case, the United States District Court for the District of Massachusetts recently held state law claims for wrongful death and punitive damages to be preempted under § 514(a) based on facts similar to those alleged here. The plaintiff in *Cannon* sued his health insurer, BCBS of Massachusetts, after it denied his partner's claim for coverage for an asthma treatment inhaler because there was no evidence that the partner had tried other inhalers as required by his plan's policy. *Cannon*, 2024 WL 3902835, at *1. The plaintiff's partner subsequently died from complications related to his asthma. *Id.*

After limited discovery to confirm the partner's status under the plan (*id.* at *1),[7] the court granted summary judgment to the insurer, holding that the plaintiff's wrongful death and punitive damages claims "related to" the plan and were therefore preempted. *Id.* at *2. Specifically, the claims were preempted "both because the Court would be required to consult the Policy to resolve them" and because they arose from the insurer's requirement that the partner try other medications before agreeing to cover the specific inhaler for which coverage was sought, which the court

---

[7] No such discovery is necessary here, as Plaintiffs allege that Mr. Schmidtknecht was a participant in the Kriete Plan. (Compl. ¶ 53.)

construed as "the alleged improper denial of benefits." *Id.* Each of the claims at issue "reli[ed] upon the same premise: that Defendant improperly denied [the partner] a particular health benefit, thus resulting in his death." *Id.* Moreover, the court held that because the Massachusetts wrongful death statute provided for relief not available under ERISA, such a claim for breach of a plan was "precisely the type of alternative enforcement mechanism disallowed under ERISA § 502(a)." *Id.* at *3 ("'[S]tate laws which furnish alternative enforcement mechanisms threaten the uniformity that Congress labored to achieve and thus are preempted by ERISA.'") (quoting *Carpenters Loc. Union No. 26 v. U.S. Fid. & Guar. Co.*, 215 F.3d 136, 140 (1st Cir. 2000)) (alteration in original). Even assuming the plaintiff had asserted an ERISA claim, the defendant still would have been entitled to summary judgment because the complaint sought remedies not available under ERISA. *Id.* at *3. The same disposition should result here.

Similarly, claims for punitive damages in connection with the allegedly improper administration of an ERISA plan also are preempted under § 514(a). *Reilly v. Blue Cross & Blue Shield United of Wis.*, 846 F.2d 416, 418 (7th Cir. 1988) (affirming dismissal of Wisconsin state law claims and demand for punitive damages as preempted by § 514(a)). Indeed, a claim for punitive damages (Count IV) does not constitute an independent cause of action under Wisconsin law. *Hansen v. Tex. Roadhouse, Inc.*, 827 N.W.2d 99, 108 (Wis. Ct. App. 2013) ("Punitive damages are a remedy, not a cause of action") (citing *Brown v. Maxey*, 369 N.W.2d 677, 680 (1985)).

Finally, there is no authority supporting the proposition that "Claim of the Estate" (Second Cause of Action) is an independent cause of action under Wisconsin law that would survive the dismissal of their other causes of action. Even if it did somehow survive, it would be preempted for the same reason as Plaintiffs' other claims.

In short, because each of Plaintiffs' claims "relate to" the ERISA-governed Kriete Plan, their claims are expressly preempted under ERISA § 514(a) and must be dismissed.

### 2. Complete preemption

In addition to being expressly preempted by § 514(a), each of the claims brought by William Schmidtknecht as Special Administrator of the Estate (negligence, negligence per se, punitive damages, "claim of the estate") are completely preempted by ERISA's civil enforcement provisions under § 502(a). A claim is completely preempted by ERISA where: (1) the plaintiff's state law claim could have been brought as a denial of coverage claim under § 502(a); and (2) no legal duty independent of ERISA or the plan terms is violated. *Davila*, 542 U.S. at 210. Explaining the comprehensive nature of § 502(a), the Supreme Court ruled in *Davila*:

> [I]f an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls 'within the scope of' ERISA § 502(a)(1)(B). In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely preempted by ERISA §502(a)(1)(B).

*Id.* (internal citation omitted). In *Pilot Life*, the Supreme Court explained that Section 502's preemptive sweep derives from Congress' "careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans," as reflected in Section 502(a)'s "comprehensive civil enforcement scheme." *Pilot Life*, 481 U.S. at 54. The Supreme Court further stated:

> The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.

*Id.*

Both elements of complete preemption are satisfied here. First, the claims in this action brought on behalf of the Estate are, in essence, claims for benefits allegedly denied to Mr. Schmidtknecht, for which he could have brought an ERISA claim. As Mr. Schmidtknecht was a participant in the Kriete Plan, ERISA § 502(a) authorizes a claim for the allegedly improper denial of coverage for Advair Diskus, including that he allegedly did not receive proper notice of formulary changes. 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought-- (1) by a participant or beneficiary-- . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ."). As Special Administrator of the Estate, William Schmidtknecht can bring any claims that would have belonged to Mr. Schmidtknecht at his death. All of Optum Rx's actions which Plaintiffs allege led to Mr. Schmidtknecht's death were part of the allegedly improper administration of the Kriete Plan. Thus, Mr. Schmidtknecht could have brought a claim "to recover benefits due to him under the terms of his plan," satisfying the first element of complete preemption.

The second element of complete preemption also is satisfied here. A legal duty is not independent of ERISA "if it 'derives entirely from the particular rights and obligations established by [ERISA] benefit plans.'" *Bryant*, 2021 WL 1216888, at *4 (quoting *Davila*, 542 U.S. at 213) (alteration in original). "'[W]hen liability potentially exists only because of the administration of an ERISA plan, the plaintiff's claim is completely preempted by ERISA.'" *Id.* at *5 (quoting *Simon v. Express Scripts, Inc.*, No. 13-0187, 2013 WL 5375433, at *11 (W.D. La. Sept. 23, 2013)).

Here, Plaintiffs' claims at their core arise from, and would not exist without, duties Optum Rx allegedly owed Mr. Schmidtknecht under the Kriete Plan, and not from any independent legal duties. That Plaintiffs have attempted to plead their claims in terms of duties allegedly residing

outside of ERISA, such as a duty to not raise prescription drug prices or a duty to notify plan participants of formulary changes, does not change this result. "Artful pleading on the part of a plaintiff to disguise federal claims by cleverly dressing them in the clothing of state-law theories will not succeed" in avoiding complete preemption. *Franciscan Skemp Healthcare, Inc. v. Central States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 596 (7th Cir. 2008). Any duty Optum Rx owed Mr. Schmidtknecht is by virtue of Mr. Schmidtknecht's participation in the Kriete Plan with which Optum Rx contracted to provide pharmacy benefit management services. Mr. Schmidtknecht's alleged right to receive the Advair Diskus inhaler is a benefit derived solely from the Kriete Plan. Accordingly, any Optum Rx liability for denying his claim on January 10, 2024, necessarily would require the Court to interpret the terms of the Kriete Plan. Thus, despite Plaintiffs' apparent reliance on Wisconsin common law doctrines and statutory provisions, none of their claims are based on a duty independent of ERISA or the terms of the Kriete Plan.

Because the Estate's claims fall squarely within the scope of ERISA's civil enforcement provision at § 502(a)(1)(B), and are therefore subject to complete preemption in addition to express preemption under § 514(a), the claims must be dismissed.

### D. The Complaint Fails To State A Claim Under ERISA And Should Be Dismissed With Prejudice.

Even if Plaintiffs had attempted to state a claim for denial of benefits under ERISA in their Complaint, such a claim would fail because Plaintiffs seek remedies that are not available under ERISA. Therefore, rather than construing Plaintiffs' claims as ERISA claims, as is occasionally done in ERISA preemption cases, the Court should dismiss Plaintiffs' claims in their entirety as to Optum Rx.

Plaintiffs seek remedies that are not available under ERISA, while failing to seek any of the remedies that ERISA does offer for alleged wrongful denial of benefits. Plaintiffs seek only

compensatory and punitive damages (Compl. ¶¶ 85–86, 126–130). ERISA's exclusive remedies, however, are recovery of benefits under the plan, enforcement of rights under the plan, clarification of rights to future benefits, and injunctive relief against future violations. 29 U.S.C. § 1132(a). Plaintiffs are not seeking to recover Mr. Schmidtknecht's benefits under the Kriete Plan. Because Plaintiffs elected to seek state law remedies under state law causes of action rather than seeking the exclusive remedies provided by ERISA, their claims should be dismissed and not construed as ERISA claims. *See Maciosek v. Blue Cross & Blue Shield United of Wis.*, 930 F.2d 536, 541 (7th Cir. 1991) (affirming dismissal of state law claims preempted by ERISA and declining to construe such claims as ERISA claims where Plaintiffs elected to seek only state law claims and remedies).

Because Plaintiffs' Complaint cannot properly be construed to state a claim under ERISA for alleged wrongful denial of benefits, each of Plaintiffs' claims, which are preempted by ERISA, and should be dismissed.

## III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENCE PER SE.

In addition to being preempted by ERISA, Plaintiffs' negligence per se claim fails as a matter of law because the alleged statutory violations on which Plaintiffs base their claim cannot establish a duty of care for negligence per se under Wisconsin law. Violation of a statute is negligence per se only if all three of the following requirements are met: "(1) the harm inflicted was the type the statute was designed to prevent; (2) the person injured was within the class of persons sought to be protected; and (3) there is some expression of legislative intent that the statute become a basis for imposition of civil liability." *Antwaun A. ex rel. Muwonge v. Heritage Mut. Ins. Co.*, 596 N.W.2d 456, 466 (Wis. 1999) (quoting *Tatur v. Solsrud*, 498 N.W.2d 232, 235 (1993)). Statutes meeting these requirements are commonly referred to as "safety statutes." *See Cooper v. Eagle River Mem'l Hosp., Inc.*, 270 F.3d 456, 460 (7th Cir. 2001) (applying Wisconsin

law). Concerning the third element, a statute does not impose civil liability unless it "'clearly and beyond any reasonable doubt expresses such purpose by language that is clear, unambiguous and peremptory.'" *McCraw v. Mensch*, No. 06-C-86-S, 2006 WL 2620344, at *1 (W.D. Wis. Sept. 12, 2006) (quoting *Antwaun A.*, 596 N.W.2d at 466).

> In distinguishing "safety statutes" from more general regulatory measures, plaintiffs must do more than baldly assert that the statute in question protects a specific class of individuals. All legislation promotes the public welfare to some degree. Instead, the legislation must evince a clear and unambiguous legislative desire to establish civil liability.

*Cooper*, 270 F.3d at 460.

In determining whether there is evidence of a "clear and unambiguous legislative desire to establish civil liability," courts look to the text of a statute, the nature of the remedies under the statute, and legislative history. In *Walker v. Bignell*, the Wisconsin Supreme Court held that a statute requiring municipalities to trim roadside vegetation "to provide safety to users of the highway" was a safety statute imposing civil liability based on the clear concern for the safety of highway users in the text of the statute. 301 N.W.2d 447, 455–56 (Wis. 1981) ("[W]e believe the requisite intent may be supplied by necessary implication from the language of the statute. The language added by the 1949 amendment is such a clear expression of concern for the safety of highway users, committed so plainly to the responsibility of the public highway authorities, that we conclude that the municipal bodies so charged are exposed to civil liability for their failure to do that with which they are charged.").

Conversely, the courts in *Cooper* and *McCraw* each found that the regulatory nature of the statutes and administrative regulations at issue in those cases, coupled with the lack of an express private right of action, reflected a lack of legislative intent to impose civil liability for violations of those statutes and regulations. *See Cooper*, 270 F.3d at 461 ("The administrative code provisions

at issue here are clearly regulatory in nature and do not reveal the clear and unambiguous language necessary to impose civil liability. . . . while Section 124.24 requires hospitals to maintain written policies, failure to comply with the provision allows the Wisconsin Department of Health and Family Services to revoke or suspend a hospital's license. . . This, too, supports the conclusion that the relevant administrative code provisions do not constitute 'safety statutes' as the Wisconsin Supreme Court has defined that term."); *McCraw*, 2006 WL 2620344, at *1–2 (holding that statute providing criminal penalties for the unauthorized practice of law showed no evidence of legislative intent to impose civil liability); *see also Leahy by Heft v. Kenosha Mem'l Hosp.*, 348 N.W.2d 607, 612 (Wis. Ct. App. 1984) ("[T]he purpose of ch. 441, Stats., is to regulate the nursing profession through the creation of a board of nursing and to provide for the licensing of nurses. While these laws result in securing the safety and welfare of the public as an entity, nothing in ch. 441, directly or by implication, reveals a legislative intent to grant a private right of action for violation of the statute.").[8]

Here, none of the statutes on which Plaintiffs base their negligence per se claim is a "safety" statute. Plaintiffs cite to three statutory provisions regulating the operation of PBMs (and disability insurance policies and health plans offering a prescription drug benefit): Wis. Stats. § 632.861(3) (governing maximum point of sale prices for covered prescription drugs) (*see* Compl. ¶ 109); § 632.861(4) (requiring advance notice of formulary changes) (*see id.* ¶ 112); and § 632.866(2)(a) (setting standards underlying step therapy protocols) (*see id.* ¶ 117). There is no evidence that the

---

[8] This case is very different from the line of cases applying Wisconsin law holding that violations of Food and Drug Act medication side effect warning regulations can constitute negligence per se. *See Lukaszewicz v. Ortho Pharm. Corp.*, 510 F. Supp. 961, 965 (E.D. Wis. 1981). Notably, this line of cases, beginning with *Lukaszewicz*, relies on Wisconsin's adoption of Restatement (Second) of Torts § 402A, imposing liability for "[u]navoidably unsafe products" (*see Lukaszewicz*, 510 F. Supp. at 962–63) rather than the standard for safety statutes articulated by the Wisconsin Supreme Court in *Antwaun A.* Plaintiffs' claims here do not relate to "unreasonably unsafe products," and the statutes at issue are far more like the regulatory provisions discussed in *Cooper, McCraw, and Leahy*.

Wisconsin Legislature intended any of those statutory provisions to establish civil liability. None of the statutes provide for a private right of action. To the contrary, the Legislature contemplated that these statutes would be enforced by the State of Wisconsin's Commissioner of Insurance via regulatory enforcement proceedings. *See* Wis. Stat. § 601.41 (empowering Commissioner of Insurance to enforce Wis. Stats. chs. 600–655, including through regulatory enforcement proceedings) or an action for injunctive relief and compulsory forfeitures by the Commissioner of Insurance under Wis. Stat. § 601.64 (providing cause of action of Commissioner of Insurance to seek injunctive relief, impose forfeitures, civil, and criminal penalties, and revoke licenses for violations of Wis. Stats. chs. 600–655). Nor does the text of the statutes themselves suggest any intent to create civil liability in addition to the regulatory enforcement mechanisms explicitly provided. In short, Plaintiffs will be unable to point to any evidence of a "clear and unambiguous" legislative desire for Wis. Stats. §§ 632.861(3) and (4) and 632.866(2)(a) to give rise to civil liability. Thus, as a matter of law, Plaintiffs cannot state a claim for negligence per se based on those statutes.

## **CONCLUSION**

All of Plaintiffs' claims against Optum Rx are preempted by ERISA, and the Complaint does not—and cannot—state a claim under ERISA. Further, none of the Wisconsin statutes underlying Plaintiffs' negligence per se claim is a required "safety" statute. Accordingly, this Court should grant Optum Rx's Motion and dismiss Plaintiffs' claims in their entirety, with prejudice.

Dated: February 14, 2025.

**FOLEY & LARDNER LLP**

    */s/ Matthew D. Krueger*
Matthew D. Krueger, WI Bar No. 1096923
Foley & Lardner LLP
777 E. Wisconsin Avenue
Milwaukee, WI 53202-5306
(P) 414.297.4987
(F) 414.297.4900
mkrueger@foley.com

Andrew C. Gresik, WI Bar No. 1104650
Foley & Lardner LLP
150 East Gilman Street, Suite 5000
Madison, WI 53703-1482
(P) 608.258.4235
(F) 608.258.4258
agresik@foley.com

*Attorneys for Defendant OptumRx, Inc.*

21

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below, the foregoing document was electronically filed with the Clerk of Court and served on all counsel of record using the Court's CM/ECF system.

Dated: February 14, 2025

*/s/ Matthew D. Krueger*
Matthew D. Krueger