UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHANON SCHMIDTKNECHT, et al.,

                Plaintiff,

      v.                                  Case No. 25-CV-93

OPTUM RX, INC., et al.,

                Defendants.

## DECISION AND ORDER

**1. Background**

Cole[1] Schmidtknecht suffered from asthma all his life. (ECF No. 19, ¶ 48.) He treated his asthma with Advair Diskus, a prescribed inhaler that his medical insurer, United Health, had covered with Cole's out-of-pocket cost being less than $70. (ECF No. 19, ¶ 52.) On January 10, 2024, Cole went to his local Walgreens to refill his prescription. Upon presenting his prescription, Cole was told that his insurer no longer covered his Advair inhaler, and that it would cost him $539.19. (ECF No. 19, ¶¶ 54-55.) Cole had received no advance notice of this coverage change (ECF No. 19, ¶ 58), and Walgreens made no effort to assist him in obtaining an alternative covered

---

[1] To distinguish the Schmidtknechts, the court refers to them by their first names.

treatment (ECF No. 19, ¶¶ 64-71). Cole could not afford the prescription, and he left without his inhaler. (ECF No. 19, ¶ 72.)

Five days later, Cole suffered a severe asthma attack. (ECF No. 19, ¶ 79.) As his roommate drove him to the hospital, Cole became unresponsive. (ECF No. 19, ¶¶ 80-81.) When he arrived at the hospital, Cole was unconscious, pulseless, and blue. (ECF No. 19, ¶ 82.) After six days on a ventilator in the hospital's intensive care unit, doctors informed his parents there was nothing more that could be done. (ECF No. 19, ¶ 85.) Cole's parents, Shanon and William Schmidtknecht, agreed to remove him from life support, and he died on January 21, 2024, never having regained consciousness. (ECF No. 19, ¶¶ 84, 86.)

Shanon and William, on behalf of themselves and William as special administrator of Cole's estate, brought this wrongful death action against Optum Rx, Inc. and Walgreens.

Optum Rx, a subsidiary of United Health Group, is a pharmacy benefit manager (PBM). (ECF No. 19, ¶¶ 15-17.) PBMs "act as middlemen between health insurers, prescription drug companies, and pharmacies." (ECF No. 19, ¶ 15.) PBMs decide which drugs are covered under an insurance plan. (ECF No. 19, ¶ 22.)

The plaintiffs allege that Optum Rx chose to stop covering Cole's Advair inhaler not because of any legitimate medical reason, but because manufacturers of competing drugs provided Optum Rx with financial incentives. (ECF No. 19, ¶¶ 23-24.) Although state law allegedly required Optum Rx to give Cole notice that his

2

prescription would no longer be covered, it failed to do so. (ECF No. 19, ¶¶ 42, 58.) And although there are ways by which an insured can obtain coverage for an otherwise un-covered drug or to switch to a comparable covered drug, the process can be complicated and time-consuming. (ECF No. 19, ¶¶ 25-39.)

Optum Rx has moved to dismiss the plaintiffs' amended complaint. (ECF No. 22.) The briefing on that motion is complete and the matter is ready for resolution. The court has jurisdiction under 28 U.S.C. § 1332. (ECF No. 19, ¶¶ 12-13.)

**2. Motion to Dismiss Standard**

To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

In evaluating a motion to dismiss under Rule 12(b)(6), courts must "accept the well-pleaded facts in the complaint as true"; however, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Courts also "draw all reasonable inferences from these facts in favor of the plaintiff." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001)

While a plaintiff is not required to plead detailed factual allegations, there must be more than labels and conclusions. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (holding that a complaint must provide sufficient facts to raise a right to relief above the speculative level, and mere labels or formulaic recitations are insufficient under Rule 12(b)(6)). Nevertheless, a complaint "need not allege each evidentiary element of a legal theory to survive a motion to dismiss." *Freeman v. Metro. Water Reclamation Dist. of Greater Chicago*, 927 F.3d 961, 965 (7th Cir. 2019) (citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510–14 (2002)).

3. **Analysis**

"Pharmacy benefit managers (PBMs) are a little-known but important part of the process by which many Americans get their prescription drugs." *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 83 (2020). A health insurer will contract with a PBM to administer the health plan's prescription drug benefit. *See id.* at 84. The PBM, in turn, contracts with pharmacies to fill prescriptions for beneficiaries. *See id.* When a beneficiary goes to a pharmacy to fill a prescription, the pharmacy communicates with the PBM, not the insurer, to determine whether the prescription is covered and the beneficiary's out-of-pocket cost. *Id.*

As to any portion of the prescription price not paid directly by the beneficiary, the PBM pays the pharmacy for the prescription in accordance with the PBM's contract with pharmacy. *Rutledge*, 592 U.S. at 84. The PBM is then reimbursed by the insurer according to the contract between the PBM and the insurer. *Id.*

This sounds a simple and straightforward, but there are a variety of ways that PBMs can leverage these roles and relationships for profit. Critics contend that consumers and independent pharmacies often suffer in the form of higher drug costs, higher out-of-pocket costs, limits in prescription drug access, and reimbursement rates that are insufficient to cover the pharmacy's costs. *See, e.g.*, Rebecca Robbins and Reed Abelson, N.Y. Times, *The Opaque Industry Secretly Inflating Prices for Prescription Drugs*, June 21, 2024, available at https://www.nytimes.com/2024/06/21/business/prescription-drug-costs-pbm.html; Federal Trade Commission, *Pharmacy Benefit Managers: The Powerful Middlemen Inflating Drug Costs and Squeezing Main Street Pharmacies*, Interim Staff Report, July 2024, available at https://www.ftc.gov/system/files/ftc_gov/pdf/pharmacy-benefit-managers-staff-report.pdf.

As a result, all states regulate PBMs in some form. *See* National Academy for State Health Policy, *State Pharmacy Benefit Manager Legislation*, Oct. 21, 2024, available at https://nashp.org/state-tracker/state-pharmacy-benefit-manager-legislation/. In March 2021, Wisconsin enacted various laws related to PBMs, *See* 2021 Wis. Act 9. Three provisions of that law are relevant here.

First, an enrollee shall pay the lower of either "[t]he cost-sharing amount for the prescription drug for the enrollee under the policy or plan" or the cost of the prescription without insurance. Wis. Stat. § 632.861(3).

Second, a PBM must provide an "enrollee advanced written notice of a formulary change that removes a prescription drug from the formulary of the policy

or plan or that reassigns a prescription drug to a benefit tier for the policy or plan that has a higher deductible, copayment, or coinsurance." Wis. Stat. § 632.861(4). PBMs must provide notice at least 30 days before any such change to any enrollee who, according to claims history, is currently using an affected drug. *Id*.

Third, any step therapy protocol[2] implemented by a PBM must be based on "peer-review publications, evidence-based research, and widely accepted medical practice," if available. Wis. Stat. § 632.866(2)(a). The PBM must also disclose how it decided on that step therapy protocol. Wis. Stat. § 632.866(2)(c).

## 3.1. Express Preemption

At the root of the plaintiffs' claim against Optum Rx is Cole's health insurance plan. Cole was covered under a self-insured plan offered by his employer and administered by United Health. (ECF No. 19, ¶¶ 51, 53.) Optum Rx administered the pharmacy benefit under that plan. (ECF No. 19, ¶ 53.)

Cole's health insurance plan was subject to the Employee Retirement Income Security Act (ERISA). *See* 29 U.S.C. §§ 1002(3); 1003(a). Section 514 of ERISA generally preempts "any and all State laws insofar as they may … relate to any employee benefit plan …." 29 U.S.C. § 1144(a). Preemption serves Congress's aim of creating a nationally "uniform body of benefits law" and "to minimize the administrative and financial burden of complying with conflicting directives among

---

[2] "'Step therapy protocol' means a protocol or program that establishes the specific sequence in which prescription drugs for a specified medical condition, whether self-administered or physician-administered, that are medically appropriate for a particular patient are covered under a policy or plan." Wis. Stat. § 632.866(1)(e).

States or between States and the Federal Government." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990).

"A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Ingersoll-Rand*, 498 U.S. at 139 (quoting *Shaw v. Delta Air Lines*, 463 U.S. 85, 97 (1983)). Thus, "laws that require providers to structure benefit plans in particular ways, such as by requiring payment of specific benefits, or by binding plan administrators to specific rules for determining beneficiary status" are the sorts of laws that ERISA is primarily concerned with preempting. *Rutledge*, 592 U.S. at 86-87 (citing *Shaw*, 463 U.S. 85; *Egelhoff v. Egelhoff*, 532 U.S. 141 (2001)); *see also Trs. of the AFTRA Health Fund v. Biondi*, 303 F.3d 765, 775 (7th Cir. 2002) (quoting and discussing *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658-60 (1995)).

As for whether a law has a "reference to" an ERISA plan, "[a] law refers to ERISA if it 'acts immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation.'" *Rutledge*, 592 U.S. at 88 (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320 (2016)). "Under this 'broad common-sense meaning,' a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll-Rand*, 498 U.S. at 139.

"A state law may also be subject to pre-emption if "acute, albeit indirect, economic effects of the state law force an ERISA plan to adopt a certain scheme of substantive coverage." *Rutledge*, 592 U.S. at 87 (quoting *Gobeille*, 577 U.S. at 320).

Although Congress intended preemption to be broad, *see Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987), it never intended that preemption should apply to every case where there was some tenuous thread connecting it to an ERISA plan. *See Davis v. Richards*, 7 F.4th 534, 540 (7th Cir. 2021) (quoting *New York State Conf. of Blue Cross & Blue Shield Plans*, 514 U.S. at 655); *see also De Buono v. Nysa-Ila Med. & Clinical Servs. Fund*, 520 U.S. 806, 816 (1997) ("Any state tax, or other law, that increases the cost of providing benefits to covered employees will have some effect on the administration of ERISA plans, but that simply cannot mean that every state law with such an effect is pre-empted by the federal statute."); *Shaw*, 463 U.S. at 100 n.21 ("Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan."). "[N]ot every state law that affects an ERISA plan or causes some disuniformity in plan administration has an impermissible connection with an ERISA plan." *Rutledge*, 592 U.S. at 87.

Because ERISA's preemption provision leaves much grey area, courts turn to Congress's objectives underlying ERISA to assess whether a particular state law has an impermissible connection to an ERISA plan. *Davis*, 7 F.4th at 541 (quoting *Rutledge*, 592 U.S. at 86); *see also Traveler*, 514 U.S. at 656 ("We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.").

Before further analysis of the parties' arguments, a brief discussion regarding the distinction between claims and legal theories is warranted. In their amended complaint, the plaintiffs refer to "counts" of negligence (ECF No. 19, ¶¶ 91-97), negligence per se (ECF No. 19, ¶¶ 110-28), and punitive damages (ECF No. 19, ¶¶ 130-33). They then identify a "cause of action" for wrongful death (ECF No. 19, ¶¶ 140-42) and a second "cause of action" titled "claim of the estate of Cole Schmidtkneckt" (ECF No. 19, ¶ 144-46).

Negligence and negligence per se are legal theories, which are "the vehicle[s] for pursuing the claim." *St. Augustine Sch. v. Underly*, 78 F.4th 349, 352 (7th Cir. 2023). A legal theory is distinct from a claim. "One lawsuit may raise multiple claims, and each claim may be supported by multiple theories." *Id*. The amended complaint presents a single claim—wrongful death—although broken out as a "wrongful death action" and a "claim of the estate of Cole Schmidtknecht." (ECF No. 19 at 26-27.) Finally, punitive damages, which the plaintiffs identify as Count IV, is neither a theory nor a claim but rather a remedy. *Estate of Wobschall v. Ross*, 488 F. Supp. 3d 737, 755 (E.D. Wis. 2020).

These distinctions are important because at the motion to dismiss stage the court may dismiss only claims. The court cannot dismiss parts of claims or particular theories. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). Summary judgment is the procedure for narrowing claims or foreclosing theories. *See id*.

The plaintiffs allege that Optum Rx had a duty to not artificially inflate prices and to provide notice of a decision to reschedule a medication to Cole. (ECF No. 19,

¶¶ 92-93.) In support of their negligence per se count, the plaintiffs point to the Wisconsin statutes regulating PBMs. (ECF No. 19, ¶ 111 (citing Wis. Stat. §§ 632.861(3), (4) and 632.866(2)(a)).) Thus, the plaintiffs do not attempt to assert a claim directly under Wisconsin's PBM's statute; the statutes do not provide for such a private cause of action. Rather, the plaintiffs point to the PBM statutes as establishing the duties that Optum Rx owed to the Cole and thus as a foundation for a wrongful death claim.

Optum Rx does not broadly argue that Wisconsin's PBM statutes are preempted by ERISA. Rather, Optum Rx's narrow argument is that ERISA preempts the plaintiffs' wrongful death claim. In their response, however, the plaintiffs focus on preemption vis-à-vis Wisconsin's PBM statutes rather than their wrongful death claim. As a result, the parties largely talk past each other.

"ERISA 'preempts a state law claim if the claim requires the court to interpret or apply the terms of an employee benefit plan.'" *Biondi*, 303 F.3d at 780 (quoting *Collins v. Ralston Purina Co.*, 147 F.3d 592, 595 (7th Cir. 1998)). But ERISA does not preempt a claim simply because proof of the claim will require some review, assessment, or consideration of an ERISA plan. *See Laborers' Pension Fund v. Miscevic*, 880 F.3d 927, 931 (7th Cir. 2018) (citing *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., Inc.*, 657 F.3d 496, 504 (7th Cir. 2011)); *see also Biondi*, 303 F.3d at 780 ("A state-law claim is not expressly preempted under § 1144(a) merely because it requires a cursory examination of ERISA plan provisions.").

It is only by virtue of Cole's health insurance plan that Optum Rx plausibly owed any duty to Cole. To prove that Optum Rx owed a duty to Cole, the nature and scope of Cole's coverage under the plan will be a necessary component to the plaintiffs' claim. But Optum Rx has not shown that the plaintiffs' claim will require the court to cross the line into *interpretation* or *application* of the terms of the plan. Rather, in relation to the plaintiffs' claim as pled in the amended complaint, the facts related to the plan appear to be undisputed, secondary, and superficial. The plan provides merely the context for the dispute akin to how a plan may provide the foundation for a fraud or misrepresentation claim. *See Biondi*, 303 F.3d at 780 (holding that ERISA did not preempt claim that defendant defrauded plan by failing to update plan of a change in eligibility); *Laborers' Pension Fund v. Lake City Janitorial, Inc.*, 758 F. Supp. 2d 607, 616 (N.D. Ill. 2010) (rejecting defendant's argument that preemption barred fraud claim related to defendant's misrepresentations related to contributions owed the plan); *cf. Puller v. Unisource Worldwide, Inc.*, No. 3:08-CV-813, 2009 U.S. Dist. LEXIS 9765, at *16-17 (E.D. Va. Feb. 9, 2009) (rejecting argument that plaintiff's negligence claim against plan for negligent recordkeeping, which resulted in damages in the amount of the withheld benefits, was preempted by ERISA).

"[S]tate wrongful death actions based on an insurer's denial of benefits under an ERISA-governed plan are statutorily preempted." *Cannon v. Blue Cross & Blue Shield Mass., Inc.*, 132 F.4th 86, 90 (1st Cir. 2025). This principle extends to PBMs when it is the PBM making coverage decisions on behalf of the plan. *See Bryant v. Express Scripts Inc.*, No. 3:20-CV-01343, 2021 WL 1216888, at *4 (W.D. La. Mar. 15,

2021), *report and recommendation adopted,* No. 3:20-CV-01343, 2021 WL 1207722 (W.D. La. Mar. 30, 2021).

But unlike the plaintiffs in *Cannon*, 132 F.4th at 90, *Di Joseph v. Standard Ins. Co.*, 776 F. App'x 343, 347 (7th Cir. 2019) (unpublished), *Spain v. Aetna Life Ins. Co.*, 11 F.3d 129, 131 (9th Cir. 1993), *Bryant*, 2021 WL 1216888, *Farias v. Massachusetts Laborers' Health & Welfare Fund*, No. CV 17-11097-MBB, 2018 WL 340031, at *1 (D. Mass. Jan. 9, 2018), *Simon v. Express Scripts, Inc.*, No. CIV.A. 13-0187, 2013 WL 5375433 (W.D. La. Sept. 23, 2013), and *Ramirez v. Potawatomi Bingo Casino*, No. 06-C-322, 2006 U.S. Dist. LEXIS 83685, at *6 (E.D. Wis. Nov. 15, 2006), upon which Optum Rx relies, the plaintiffs' claim is not premised on Optum Rx's denial of benefits.

For purposes of the present motion the court focuses on the plaintiffs' theory that Optum Rx was negligent because it failed to give Cole notice that it would no longer be covering his medication, and thus Cole's out-of-pocket cost would skyrocket. (*See* ECF No. 19, ¶¶ 93; 94 b., d.; 115-17.) Thus, the plaintiffs' claim rests not on a lack of coverage but rather a lack of notice. Granted, if the plan had covered Advair Diskus there would have no reason for Optum Rx to provide notice to Cole. But that does not turn the plaintiffs' argument into one that Optum Rx was negligent because it did not cover Advair Diskus.

Claims arising from an alleged lack of notice are not categorically exempt from preemption. *See, e.g.*, *Aucoin v. RSW Holdings, L.L.C.*, 476 F. Supp. 2d 608, 615 (M.D. La. 2007) (rejecting argument that state law requiring notice regarding continuation
12

of benefits was exempt from preemption under 29 U.S.C. § 1144(b)(2)(A) as a state law regulating insurance); *Perry v. FTData, Inc.*, 198 F. Supp. 2d 699, 707 (D. Md. 2002) (same); *see also Howard v. Gleason Corp.*, 901 F.2d 1154, 1157-58 (2d Cir. 1990) (finding claim that insurer violated state law by failing to provide insurer conversion rights preempted because ERISA regulated the notice that must be provided in such circumstances).

A claim that a PBM was negligent because it failed to provide a beneficiary with notice that his prescription would no longer be covered, and thus his out-of-pocket cost would greatly increase, does not implicate any of the policies underlying preemption. Requiring PBMs to provide notice of coverage changes to beneficiaries does not mandate plans to provide any particular benefit or dictate plan administration. *See N.Y. State Conference of Blue Cross & Blue Shield Plans*, 514 U.S. at 658. Nor does the notice requirement force plans to make any particular choice such that it functions as a regulation of the plan itself. *Id.* at 659-60. Plans are still able to provide uniform national benefits. *See id.* at 660. Granted, requiring notice may increase costs to the PBMs, and when the PBM is providing pharmacy benefit management services to an ERISA plan, those costs are likely to be shifted to the plan. But such increased costs do not result in preemption. *See Rutledge*, 592 U.S. at 88. Consequently, Optum Rx has failed to show that express preemption requires dismissal of the plaintiffs' claim.

### 3.2. Complete Preemption

Aside from express preemption under § 514(a) of ERISA, 29 U.S.C. § 1144(a), Optum Rx argues that the plaintiffs' claim is subject to complete preemption under § 502(a), 29 U.S.C. § 1132(a). (ECF No. 23 at 26-29.) Section 502(a) authorizes suits by ERISA plan participants for benefits, to clarify their right to future benefits, or to otherwise enforce their rights under the plan. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 209.

"[T]he first prong of the Supreme Court's test for preemption is whether the plaintiff 'at some point in time, could have brought his claim under ERISA....'" *Davis*, 7 F.4th at 545 (quoting *Davila*, 542 U.S. at 210). Second, there must not be any "other independent legal duty that is implicated by a defendant's actions." *Studer v. Katherine Shaw Bethea Hosp.*, 867 F.3d 721, 724 (7th Cir. 2017) (quoting *Davila*, 542 U.S. at 210).

Optum Rx argues that the plaintiffs' claim is essentially a claim for the denial of benefits and thus could have been brought under § 502(a). (ECF No. 23 at 27.) But as discussed above, the plaintiffs' claim is (in part) that Optum Rx was negligent because it failed to provide trs to be distinct from the causes of action available under § 502(a). Optum Rx has failed to demonstrate that either ERISA or the plan documents address whether a participant is entitled to notice regarding changes to prescription drug benefits or the nature and extent of any such notice.

Similarly, the fact that the plan provided the basis for Cole's relationship with Optum Rx does not necessarily mean that the court must interpret the plan documents. Optum Rx overstates that law when it says, "[W]hen liability potentially exists only because of the administration of an ERISA plan, the plaintiff's claim is completely preempted by ERISA," (ECF No. 23 at 21 (quoting *Bryant*, 2021 WL 1216888, at *4); *see also* ECF No. 25 at 18.) That language is attributed to the Supreme Court's statement in *Davila*, *see Bryant*, 2021 WL 1216888, at *4, (quoting *Ford v. Freemen*, 388 F. Supp. 3d 692, 700 (N.D. Tex. 2019), in turn quoting *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 903 F. Supp. 2d 880, 929 (C.D. Cal. 2012), in turn quoting *Davila*, 542 U.S. at 210). Specifically, the Court said:

> It follows that if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B).

*Davila*, 542 U.S. at 210. The Court's statement addressed liability arising only from the duty to provide coverage. It did not hold that ERISA preempts *every* claim simply because liability potentially exists only because of the administration of an ERISA plan. There are many claims—fraud being a frequent example, *see, e.g.*, *Biondi*, 303 F.3d at 780,—where there would be no liability but for the ERISA plan, yet the claim is not preempted. As alleged in the amended complaint, the plaintiffs' claim is sufficiently analogous to such a fraud claim. Therefore, Optum Rx has failed to prove that the plaintiffs' claim is subject to complete preemption under § 502(a) of ERISA.

### 3.3. Negligence Per Se

The plaintiffs' "Count III" is titled "Negligence Per Se Violation of Three Wisconsin Standard of Care Establishing a Standard of Care for PBMs." (ECF No. 19 at 19.) Optum Rx moves to dismiss this "claim" "because the alleged statutory violations on which Plaintiffs base their claim cannot establish a duty of care for negligence per se under Wisconsin law." (ECF No. 23 at 30.)

In Wisconsin, generally "statutes are not to be extended so as to impose any duty beyond that imposed by the common law unless such statute clearly and beyond any reasonable doubt expresses such purpose by language that is clear, unambiguous, and peremptory." *Burke v. Milwaukee & Suburban Transp. Corp.*, 39 Wis. 2d 682, 690, 159 N.W.2d 700, 704 (1968) (quoting *Delaney v. Supreme Inv. Co.*, 251 Wis. 374, 380, 29 N.W.2d 754, 757 (1947)). However, the violation of a "safety statute" constitutes negligence per se. *Burke*, 39 Wis. 2d at 689, 159 N.W.2d at 703.

The plaintiffs contend that the PBM statutes they rely on, Wis. Stat. §§ 632.861(3), (4), and 632.866(2)(a), are safety statutes and therefore proof that Optum Rx violated any provision would constitute negligence per se.

Whether negligence per se is a viable theory to sustain the plaintiffs' wrongful death claim is a question that is not ripe for resolution at the motion to dismiss stage. Again, at the motion to dismiss stage the court may dismiss only claims. *BBL,* 809 F.3d at 325. The plaintiffs allege both negligence and negligence per se theories. Aside from the preemption arguments discussed and rejected above, Optum Rx does not challenge the plaintiffs' negligence theory. The plaintiffs having presented one

16
Case 1:25-cv-00093-BBC   Filed 07/25/25   Page 16 of 17   Document 26

plausible theory to sustain their wrongful death claim, the court's analysis ends. *Signal Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP*, 136 F.4th 718, 724 (7th Cir. 2025) (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021)).

**4. Conclusion**

In the aim of ensuring nationally uniform standards regarding employer benefit plans, Congress greatly limited the ability for litigants to pursue tort claims that touch upon plans covered by ERISA. But ERISA does not preempt every claim that touches upon a plan. The paths may be narrow, but at the motion to dismiss stage the court is concerned only with whether there is any plausible way that the plaintiffs could sustain their claim. A wrongful death claim based on the theory that a PBM should have provided an insured notice of a change in prescription coverage is not necessarily preempted by ERISA. That said, depending on the specific facts, ERISA may nonetheless ultimately preempt the plaintiffs' claim, and each of the plaintiffs' theories is not necessarily viable. But such questions are not properly before the court on a motion to dismiss. Accordingly,

**IT IS THEREFORE ORDERED** that Optum Rx's motion to dismiss the amended complaint is **denied**.

Dated at Green Bay, Wisconsin this 25th day of July, 2025.

*s/ Byron B. Conway*
BYRON B. CONWAY
United States District Judge
