# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SHANON SCHMIDTKNECHT,<br>WILLIAM SCHMIDTKNECHT,<br>individually and as Special Administrator, and<br>THE ESTATE OF COLE SCHMIDTKNECHT,<br>by William Schmidtknecht as Special Administrator<br><br>Plaintiffs,<br><br>v.<br><br>OPTUMRX, INC., WALGREEN CO.,<br>a/k/a Walgreens Boots Alliance, Inc.,<br>d/b/a Walgreens Pharmacy, and<br>WALGREENS PHARMACY,<br><br>Defendants. | Case No. 1:25-cv-93-BBC |

## STIPULATED ORDER GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION

Plaintiffs Williams Schmidtknecht and Shanon Schmidtknecht ("Plaintiffs"), Defendant OptumRx, Inc. ("Optum Rx"), and Defendant Walgreen Co. ("Walgreen") (altogether, the "Parties") submit this Stipulated Order Governing Production of Electronically Stored Information ("Stipulated Order").

### I. GENERAL PROVISIONS

1. This Stipulated Order on discovery and production of documents originating as electronically stored information ("ESI") shall govern various discovery issues in the above-captioned action (the "Action").

2. This Stipulated Order does not determine the relevance, discoverability, confidentiality, authenticity or admissibility of any ESI (or hard copy documents) of the Parties, does not expand any record preservation requirements, and does not limit any

protection provided by the Federal Rules of Civil Procedure, common law, applicable statutes or rules, or otherwise.

3. This Stipulated Order does not waive any objections as to discoverability, confidentiality, authenticity, or admissibility of ESI (or hard copy documents) in the Action, or any objections raised by a Party in its written responses to specific discovery requests served in the Action.

4. Nothing in this Stipulated Order shall be interpreted to require the disclosure of any ESI (or hard copy documents) that a Party contends are protected from disclosure by the attorney-client privilege, work product doctrine or any other applicable privilege or protection.

5. This Stipulated Order shall not require the Parties to create or supply any information, which does not already exist or is not maintained by the Parties in the usual course of business.

6. This Stipulated Order is subject to, and does not modify or supersede, the terms and conditions of the Stipulated Protective Order entered in the Action.

## II. ESI PROVISIONS

1. <u>Review Methodology</u>. The Parties are permitted to use any method(s) reasonable and defensible under applicable law for identifying documents, including ESI, for review and production, including predictive coding, technology assisted review, machine learning, artificial intelligence, and human eyes-on review.

2. <u>Production Formats.</u> The Parties agree to produce documents, including ESI, as follows:

   a. A cover letter or e-mail shall be included with each production and shall include information sufficient to identify all accompanying media (hard drive, thumb drive, DVD, CD, secure FTP), shall identify each production on such media by assigning a Production Volume name or number, and shall include the Bates range for the

2

documents and/or ESI produced. The Bates Number for each page of each document shall be created so as to identify the producing Party or Parties by using a unique prefix (e.g., CS0000001).

b.  If a document, including ESI, is produced containing information designated as "Confidential" or "Attorneys Eyes Only" pursuant to the Stipulated Protective Order, the confidentiality designation shall be "burned" onto the image at a location that does not obliterate, conceal or interfere with any information from the source document (preferably in the bottom left of the image).

c.  Nothing herein shall restrict the producing Party's right to object to the receiving Party's discovery requests and to withhold documents, including ESI, on the basis of those objections or to apply appropriate redactions to produced documents and/or ESI.

d.  <u>Parent-Child Relationships.</u>  For any emails with attachments, the parent-child relationships (the association between emails and attachments) should be preserved, with the exception of the non-substantive embedded images not requiring production as described in Section II.4. Produced email attachments should be consecutively produced with the parent email record.

e.  Documents, including ESI, stored in electronic or hard-copy formats in the ordinary course of business shall be produced in the following electronic format provided that such copies are true, correct, and complete copies of the original documents/ESI:

    i.  When available, produce Microsoft Excel and Power Point files in native format, with extracted text and metadata, except if any such files are

being redacted. Any Microsoft Access files will be produced in an appropriate format.

ii.   For all documents, including ESI, produced as native files, including but not limited to Microsoft PowerPoint files, a file path to the native [or text] must be provided in the DAT load file. Additionally, a bates- stamped *.tiff placeholder matching the bates number of the native file, must be included in the production and reflected in the image load file.

iii.  To the extent possible, produce emails (and their attachments) in TIFF format with extracted text.

iv.   Produce all other electronic documents and ESI, other than those described in Section 2(e)(i) and (ii), in TIFF format by extracted text. Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image. The Bates number should be consistent across the production, contain no special characters, and be numerically sequential within a given document. Attachments to documents should be assigned Bates numbers that directly follow in sequential order the Bates numbers on the documents to which they were attached. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted, for example with a placeholder. All images should be provided in black and white single-page, Group IV TIFF with a resolution of 300 DPI. Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image. These *.tiff images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files.

v. Produce documents, including ESI, stored in hard copy in single-page TIFF images accompanied by OCR.

vi. Produce redacted Excel files in format originally found or which is able to be reasonably converted to format accompanied by OCR. If a document, including ESI, is produced in the format of redacted TIFF images, neither that document nor its parent will be produced in native format.

vii. Produce data compilations in electronic format, specifically Microsoft Excel spreadsheets or delimited text formats, with all underlying data unredacted and all underlying formulas and algorithms intact.

f. Regardless of format, all documents will be produced in full as whole documents. All multi-page documents will be produced with the pages of the document in order.

g. A Party may request that specific documents of the other Party's ESI be produced as Native Files where the TIFF production of such files results in material, adverse formatting changes (e.g., the loss of color necessary to understand the content of the document) or for other good cause. Native Files shall be produced with a Bates number. Files produced initially as Native File shall also be produced with a placeholder TIFF image and an Opticon .opt load file and Concordance .dat file for accompanying metadata and placeholder image links. If a Party requests a file that was not originally produced as a Native File subsequently be produced as a Native File, no placeholder TIFF image need be produced for that Native File.

h. <u>Metadata to be Produced.</u> Metadata to be produced: The following metadata fields should be produced for each document, including ESI, to the extent that such

information is reasonably available at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log. All requests should be read to include a request for all metadata listed below.

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| PRODBEGBATES | Beginning bates number of all produced documents | All documents |
| PRODENDBATES | Ending bates number of all produced documents | All documents |
| PRODBEGATTACH | Beginning bates number of attachment | All documents |
| PRODENDATTACH | Ending bates number of attachment | All documents |
| PRODPARENTBEG | Beginning bates number of the parent document unique to this document | All documents |
| PRODATTACHBEG | Beginning bates number(s) for each attachment unique to this document | All documents |
| CONFIDENTIAL | Confidentiality designation (if any) | All documents |
| NATIVEFILELINK | Production path to native file | All documents |
| TEXTFILELINK | Production path to extracted text or OCR file | All documents |
| CUSTODIAN | Custodial or non-custodian source(s) from which the document was collected | All documents |
| ALL CUSTODIANS | Custodial source(s) from which document was collected but subsequently suppressed as a duplicate during processing | All documents |
| FAMILYID or ATTACHID | Family (range of bates related documents—i.e. email & attachment—this field will be populated for all records in the family). | All documents |
| PRPERTIES or RCRDTYPE | Record type – will be either "email," "attach," | |

| | | |
|---|---|---|
| | "edoc," or "hardcopy." | |
| FROM | Email author | Email |
| TO | Email recipient | Email |
| CC | CC field | Email |
| BCC | Bcc field | Email |
| DOCTITLE | Document title/name/subject of the original native file as it existed at the time of collection. | Hardcopy, edoc, or attachment |
| DOCDATE | Document date/date sent, format MM/DD/YYYY, this is the SORT_DATE field, so populate across families and stand-alone filed. | Email and attachments |
| DATESENT | Email date sent, format MM/DD/YYYY | Email |
| TIMESENT | Time email sent, format 00:00:00 AM/PM | Email |
| DATECREATED | Date first created, format MM/DD/YYYY | Edoc or attachment |
| DATESVD | Date last saved/modified, format MM/DD/YYYY | Edoc or attachment |
| TIMESVD | Time last saved, format 00:00:00 AM/PM | Edoc or attachment |
| PAGECOUNT | Document page count | Edoc or attachment |
| APPLICAT | Application used to open the file (Word, Powerpoint, Adobe, Excel, Explorer, Quicken, etc.) | Edoc, email, attachment |
| DOCLINK or NATIVEFILE | Active link reflecting current filepath back to the native file | Edoc, email, attachment (only provided if receiving native files) |
| FILEEXTEN | File extension, i.e. pst, msg, pdf, doc, ppt, htm, etc. | Edoc |
| HASH | MD5 Hash value for de-duplication | Edoc, attachment |
| Text Message – Source | Name of the device messages were collected from | SMS/chat messages |
| Text Message – Date sent | Date of the chat | SMS/chat messages |
| Text Message – From | Sender | SMS/chat messages |
| Text Message – To | Recipient | SMS/chat messages |

7

| Text Message – Body | Body text | SMS/chat messages |
| Text Message – Thread Participants | Additional recipients | SMS/chat messages |
| Text Message – Attachments | List of file names of attached filed | SMS/chat messages |

    i.    Where possible, productions of ESI should be submitted via a secure File Transfer Protocol such as Accellion, Dropbox or similar. Where not possible, adhere to the following guidelines:

    j.    For productions that cannot be submitted via a secure File Transfer Protocol, use hard disk drives, formatted in Microsoft Windows-compatible, uncompressed data in USB 2.0 or 3.0 external enclosure.

    ii.    For productions under 10 gigabytes that cannot be submitted via a secure File Transfer Protocol, CD-ROM (CD-R, CD-RW) optical disks and DVD-ROM (DVD+R, DVD+RW) optical disks for Windows-compatible personal computers, and USB 2.0 Flash Drives are acceptable storage formats.

    i.    All documents and ESI produced in electronic format shall be scanned for viruses using reasonable commercial efforts prior to submission.

    j.    Encryption of productions using NIST FIPS-Compliant cryptographic hardware or software modules, with passwords sent under separate cover, is strongly encouraged.

    k.    The producing Party need only produce a single copy of a particular electronic document.

    l.    <u>Global Deduplication</u>:  A producing Party may de-duplicate ESI globally, provided however, that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the

BCC or other blind copy field, even if all remaining content in the email is identical. Removal of duplicate documents should be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. When applying global deduplication, metadata identifying all custodians in possession of each document that is removed as a duplicate must be provided in the "All Custodians" metadata field, to the extent applicable. The Parties agree that production of ESI globally de-duplicated in accordance with the provisions of this Order shall constitute production of ESI as maintained in the ordinary course of business.

m.  <u>Deduplication Methodology</u>: If a producing Party elects to de-duplicate, the producing Party shall identify ESI duplicates by using industry standard MD5 or SHA-1 algorithms (or a reasonably equivalent alternative) to create and compare hash values for exact duplicates only.

n.  <u>Email Thread Suppression</u>: Email threads are email communications that contain prior or lesser-included email communications. A most inclusive email thread is one that contains all of the prior or lesser-included emails and attachments, including each branch of the email thread. A producing Party may use e-mail thread suppression to exclude email from production, provided however, that an email that includes an attachment or content in the BCC or other blind copy field shall not be treated as a lesser-included version of an email that does not include the attachment or content, even if all remaining content in the email is identical. Upon reasonable request, the producing Party will produce a less inclusive copy of a document.

o. <u>SMS, Chat, and Instant Messages</u>: Data from SMS, MMS, chat, and instant messaging programs should be produced as full threads with metadata instead of screenshots.

p. <u>Password Protected Files</u>: The producing Party shall make reasonable efforts to ensure that encrypted or password-protected documents, including ESI, are successfully processed for review and production and the decrypted document is produced. To the extent such documents are not successfully processed, the producing Party agrees to, upon request from the receiving Party identifying the bates number for such document: (a) produce a slipsheet for each encrypted or password-protected document that cannot be successfully processed indicating that the document cannot be decrypted; (b) provide the metadata for the document, as required under this section, to the extent it can be reasonably extracted from the file in its encrypted form.

3. <u>Costs.</u> The Parties agree each party shall bear the cost of its own production. In the event, however, a Party requests the production of cumulative or repetitive information or information that otherwise imposes an undue burden, or is from a source that is not reasonably accessible due to undue burden or cost, the producing Party may object. Upon objection, the Parties shall work in good faith to resolve the issue and seek assistance of the Court, if necessary. The Court may (among other resolutions) order, pursuant to such standards for cost shifting as provided in relevant law, that the cost of production be shifted to the non-producing party.

4. <u>Embedded Files</u>. Embedded files in standalone non-email files will be produced as independent document records. Embedded graphics and similar non-substantive files embedded in emails need not be produced. Embedded files should be

assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

5. <u>Load File Formats</u>. ESI will be produced in standard Concordance load file format and an image file that is in .OPT format.

### III. DOCUMENTS PROTECTED FROM DISCOVERY

1. The Parties agree that the production of a privileged or work-product-protected document (including ESI), whether inadvertent or otherwise, is governed by Federal Rule of Civil Procedure 26(b)(5)(B) and is not a waiver of privilege or protection from discovery in this litigation or in any other proceeding.

The Parties agree that communications or documents that are privileged or protected as work product and that are generated after the commencement of this litigation need not be included in a privilege log under Federal Rule of Civil Procedure 26(b)(5).

### IV. MODIFICATION OF STIPULATED ORDER

This Stipulated Order may be modified for good cause. The Parties shall jointly submit any proposed modifications. If the Parties cannot resolve their disagreements regarding those modifications, the Parties shall have recourse to seek resolution of the dispute by the Court.

**SO ORDERED.**

Dated at Green Bay, Wisconsin this 17th day of November, 2025.

*s/ Byron B. Conway*
BYRON B. CONWAY
United States District Judge
